IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JASON M. JUSTICE, | ) |
| Petitioner, | ) |
| v. | ) Case No. 1:12-cv-01242-JDB-egb |
| MIKE PARRIS, | ) |
| Respondent. | ) |

ORDER TO MODIFY THE DOCKET,
ADDRESSING PENDING MOTION,
DENYING PETITION PURSUANT TO 28 U.S.C. § 2254,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Before the Court is the "Petitioner [sic] Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (the "§ 2254 Petition") filed by Petitioner, Jason M. Justice, Tennessee Department of Correction prisoner number 434558, an inmate at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee (§ 2254 Pet., Docket Entry ("D.E.") 1), the Supplemental Answer to Petition ("Supplemental Answer") filed by Respondent, Henry Steward, the previous warden of the NWCX[1] (Suppl. Answer, D.E. 32), Petitioner's Motion to Late File Supplemental Reply to Supplemental Answer (Mot. to Late File Suppl. Reply, D.E. 40), and Petitioner's Supplemental Reply to Supplemental Answer ("Supplemental Reply") (Supp. Reply, D.E. 41). For the reasons stated below, the Court GRANTS the motion to accept the

---

[1] The Clerk is directed to substitute the current NWCX Warden, Mike Parris, for Henry Steward as Respondent in this action. *See* Fed. R. Civ. P. 25(d).

late-filed Supplemental Reply, DISMISSES the remaining claims and DENIES the § 2254 Petition.

I. **BACKGROUND**

On October 24, 2012, Justice filed his *pro se* § 2254 Petition, accompanied by a motion seeking the appointment of counsel. (§ 2254 Pet., D.E. 1; Mot. for Counsel, D.E. 2.) His Petition raised the following issues:

1. Whether the evidence is sufficient to support his conviction (§ 2254 Pet. at 4–6, D.E. 1);

2. "Whether the trial court erred in allowing the evidence of the alleged robbery of the Petitioner by the victim when proof of such was not found to be clear and convincing" (*id.* at 7–8);

3. "Whether the trial court erred in allowing the text messages sent by Aisha Kyles to T[a]quila Deloach, as they were prejudicial and constituted hearsay" (*id.* at 9–10);

4. Whether trial counsel rendered ineffective assistance (*id.* at 11–14);

5. Whether Petitioner received ineffective assistance of post-conviction counsel at his post-conviction hearing (*id.* at 15–17); and

6. Whether the trial court erred in refusing to allow post-conviction counsel to withdraw prior to the commencement of the post-conviction hearing and to grant the Petitioner additional time to prepare for said hearing (*id.* at 18–19).

On October 25, 2012, United States Magistrate Judge Edward G. Bryant issued an order directing Justice to file an in *forma pauperis* affidavit or pay the habeas filing fee within thirty days. (Order, D.E. 3.) Because it did not appear that the inmate had complied with that order, the Court dismissed his § 2254 Petition on November 30, 2012. (Order Dismissing Pet. for Writ of Habeas Corpus, D.E. 4.) Judgment was entered on December 5, 2012. (J. in a Civil Case, D.E. 5.)

On December 10, 2012, Petitioner filed a "Motion to Reconsider or in Alternate [sic] Notice of Appeal." (Mot. to Reconsider, D.E. 6.) In an order issued on January 3, 2013, the Court construed the motion as seeking relief from judgment under Federal Rule of Civil Procedure 59(e) and granted the motion, vacated the dismissal order and judgment, denied the motion for appointment of counsel and directed Respondent to file the state-court record and a response to the Petition. (Order, D.E. 8.)

On February 27, 2013, Steward filed his "Answer to the Petitioner's 28 U.S.C. § 2254 Petition" and the state-court record. (Answer, D.E. 14; Resp't's Not. of Filing, D.E. 15.) On April 16, 2013, Petitioner filed his Reply. (Reply, D.E. 19.)

On June 26, 2013, Justice submitted a motion, titled "Petitioner's Motion to [sic] Leave for his First Amended Petition," which sought leave to amend his Reply. (Pet'r's Mot. to Amend Reply, D.E. 21.) Respondent responded in opposition to the Motion on July 1, 2013. (Resp't's Mem. of Law in Opp'n, D.E. 24-1.)

In an order issued on March 31, 2014, the Court granted leave to amend the Reply and dismissed every claim in the inmate's Petition except for Claim 2 and part of Claim 3. (Order at 17, 59–63, 65–66, D.E. 26.) The Court noted that "Justice did not exhaust Claim 2 in state court as a federal constitutional issue," (*id.* at 61), that the claim ordinarily would be barred by procedural

default because no further avenue for exhaustion existed, but that Respondent had failed to raise the affirmative defense of procedural default, (*id.* at 62). The Court dismissed Claim 3 "insofar as it seeks relief for the state courts' allegedly erroneous application of Tennessee evidentiary rules." (*Id.* at 65.) The order also noted that Respondent had "overlook[ed] the portion of Claim 3 asserting that the introduction of hearsay evidence 'violated the Petitioner's right to confrontation,'" (*id.* at 65–66), and dismissed that portion of Claim 3 that relied on the Tennessee Constitution, (*id.* at 66). The Warden was ordered to file a supplemental answer within twenty-eight days addressing whether Claim 2 was properly exhausted in state court and addressing the Confrontation Clause issue in Claim 3. (*Id.* at 63, 66.) Petitioner was invited to reply to the supplemental answer. (*Id.*)

Respondent failed to file a supplemental answer within the time specified. The Court issued an order on May 15, 2014, directing Steward to show cause why he should not be held in contempt for failing to comply with the Court's order. (Order Directing Resp't to Show Cause, D.E. 27.) On May 16, 2014, Respondent filed a response to the show cause order and a motion to accept his late-filed supplemental answer. (Resp. to Order to Show Cause, D.E. 30; Mot. to Late File Supp'l Answer, D.E. 29.) In an order issued on May 16, 2014, the Court found that Respondent had shown excusable neglect, granted the motion to file an untimely supplemental answer, instructed Respondent to docket his supplemental answer and advised Petitioner that his supplemental reply was due in twenty-eight days. (Order, D.E. 31.)

As Respondent docketed his Supplemental Answer on May 19, (Suppl. Answer, D.E. 32), the due date for Petitioner's supplemental reply was June 13, 2014. On June 6, 2014, Justice sought an extension of time to file his supplemental reply (Mot. for Extension of Time, D.E. 36.),

which the Court granted on June 16, 2014, extending the due date for Petitioner's supplemental reply by twenty-eight days, (Order, D.E. 37), or until July 14, 2014.

On July 23, 2014, Petitioner filed another motion seeking a further extension of time and seeking to excuse his late-filed motion. (2d Mot. for Extension of Time and Mot. for Late Filing, D.E. 38.) Justice explained that his inmate helper was not housed near him and had not received the Supplemental Answer in a timely manner. (*Id.* at 1.) The Court granted the motion on September 18, 2014, and extended the due date for the supplemental reply by another twenty-eight days. (Order, D.E. 39.) The order further stated that "[n]o further extensions of time will be granted." (*Id.* at 2 (emphasis omitted).)

Justice did not file a supplemental reply before the due date of October 16, 2014. On October 23, 2014, he filed a motion asking the Court to accept his late-filed supplemental reply and his Supplemental Reply to Supplemental Answer. (Mot. to Late File Suppl. Reply, D.E. 40; Suppl. Reply, D.E. 41.)

**II.      THE PENDING MOTION**

In his motion to accept his late-filed supplement, Petitioner stated that, during the time he was preparing the Supplemental Reply, his legal helper sustained a "leg-ankle-foot injury" with three fractures, which necessitated a transfer to the Lois N. DeBerry Special Needs Facility on September 15, 2014. The legal helper returned to the NWCX main compound on October 6, 2014 but, because of his injury, was unable to work until October 15, 2014. The helper finished the supplement on October 15, 2014 but had to mail it to Justice, who was housed in the NWCX annex. (Mot. to Late File Suppl. Reply at 1, D.E. 40.) Petitioner signed the motion and the Supplemental Reply on October 21, 2014.

5

Although it would have been preferable for Justice to have notified the Court in a timely manner about the unique logistical difficulties set forth in his motion, the Court will exercise its discretion to consider the late-filed Supplemental Reply. The motion to accept the late-filed supplement is GRANTED.

### III.     ANALYSIS OF PETITIONER'S REMAINING CLAIMS

#### A.     Claim 2

In Claim 2, the inmate argues that the trial court erred in allowing the State to introduce evidence of the alleged robbery of Justice and his girlfriend, Aisha Kyles, by the victim because the proof did not rise to the level of clear and convincing evidence. (§ 2254 Pet. at 7–8, D.E. 1.) The § 2254 Petition stated that, "[b]y the trial court's error in this matter, the case became fundamentally unfair trial in violation of the Constitution of the United States." (*Id.* at 8.) In its March 31, 2014 order, the Court stated that "[i]t is arguable . . . that the § 2254 Petition fairly presents Claim 2 as a federal constitutional issue." (Order at 61, D.E. 26.)

In his Supplemental Answer, Respondent argues that Justice had not exhausted Claim 2 as a federal constitutional claim in state court. (Suppl. Answer at 3, D.E. 32.) Because no further avenue existed to do so, the Warden avers that Claim 2 is barred by procedural default. (*Id.* at 1, 3–4.) Respondent is correct for the reasons stated in the order issued on March 31, 2014. (Order at 59–63, D.E. 26.) In state court, Justice challenged the introduction of the alleged robbery solely as a state-law evidentiary issue. (*See id.* at 59–60, 61–62.) His brief to the Tennessee Court of Criminal Appeals on direct appeal did not mention that the purported evidentiary error violated his rights under the United States Constitution. (*Id.* at 61–62.)

6

In his Supplemental Reply, Justice insists that the United States Supreme Court's decisions in *Martinez v. Ryan,* 132 S. Ct. 1309, 1320 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013), serve to excuse his procedural default. (Suppl. Reply at 1–3, D.E. 41.) "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted). Until recently, then, a habeas petitioner could not obtain relief when a claim was barred by procedural default due to the ineffective assistance of post-conviction counsel.

In 2012, the Supreme Court issued its decision in *Martinez*, 132 S. Ct. at 1320, which recognized a narrow exception to the rule stated in *Coleman* "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding . . . ." In such cases, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* The Supreme Court emphasized that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case . . . . does not extend to attorney errors in other proceedings beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . . ." *Id.* The requirements that must be satisfied to excuse a procedural default under *Martinez* are as follows:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

7

*Trevino*, 133 S. Ct. at 1918.

*Martinez* arose under an Arizona law that did not permit ineffective-assistance claims to be raised on direct appeal. In its subsequent decision in *Trevino*, 133 S. Ct. at 1921, the Supreme Court extended its holding in *Martinez* to states in which a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." Thus, the decision in *Trevino* modified the fourth requirement stated by *Martinez* for overcoming a procedural default. The decisions in *Martinez* and *Trevino* apply to Tennessee prisoners. *Sutton v. Carpenter*, 745 F.3d 787, 789 (6th Cir. 2014).

*Martinez* and *Trevino* cannot excuse Justice's default of the federal constitutional issue in Claim 2 because it is not a claim of ineffective assistance of counsel. Because there is no longer any means of exhausting the federal constitutional issue presented in Claim 2, it is barred by procedural default.

Claim 2 is without merit and is DISMISSED.

### B. Claim 3

In Claim 3, Petitioner maintains that the trial court erred in allowing the introduction of the text messages sent by Kyles to Taquila Deloach. (§ 2254 Pet. at 9–10, D.E. 1.) The relevant evidence at trial was as follows:

> Kyles testified that the next morning, she received a call from Deloach who was hysterical and said that her car was in the newspaper. Later that day, Kyles sent Deloach text messages from her phone. The first text message was: "When I'm done with these twists I'll be out there about six. If you need to go somewhere in between time call me and I'll bring you my car." Kyles said that Deloach still had her car at the time, but she offered to take Deloach anywhere she needed to go so she would not have to take her car. The second text message was: "I feel you. I'm mad as hell, too. I said to him that do you know how much trouble you brought on

and we're going to get through this. Qui, I'm here, and I am upset." The third text message was: "Did you get my message?" And the last text message was: "I'm right with you. We're going to figure something out. I know it's hard but try to stay calm."

*State v. Justice,* No. W2008-01009-CCA-R3-CD, 2009 WL 1741398, at *5 (Tenn. Crim. App. June 15, 2009) (footnotes omitted), *appeal denied*, (Tenn. Nov. 23, 2009).

In the March 31, 2014 order, the Court dismissed Claim 3 insofar as it sought relief for the state courts' allegedly erroneous application of Tennessee evidentiary rules. (Order at 65, D.E. 26.) Respondent was directed to answer the remaining portion of Claim 3, which alleged that the introduction of hearsay evidence violated the inmate's right under the Confrontation Clause of the United States Constitution. (*Id.* at 66.)

In his Supplemental Answer, the Warden contends that the decision of the Tennessee Court of Criminal Appeals on this issue was a reasonable application of *Crawford v. Washington*, 541 U.S. 36 (2004). (Suppl. Answer at 5–10, D.E. 32.) Although Justice raised a Confrontation Clause issue in one sentence of his brief on direct appeal, (Br. of Appellant at 26, *State v. Justice,* C.C.A. Docket No. W2008-01009-CCA-R3-CD (Tenn. Crim. App.), D.E. 15-15 at PageID 1040), the Tennessee Court of Criminal Appeals did not address the constitutional issue, *Justice,* 2009 WL 1741398, at *12. As Respondent has pointed out (Suppl. Answer at 6–7, D.E. 32), the Supreme Court has held that, where a state court rejects a prisoner's claims without explicitly addressing a federal claim that the inmate subsequently raises in a federal habeas proceeding, "the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013); *see also id.* at 1096 ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some

9

limited circumstances be rebutted."). Petitioner makes no argument that the presumption should not apply in this case. Here, the Tennessee Court of Criminal Appeals may well have concluded that Justice's "fleeting" mention of the Confrontation Clause "in passing" was insufficient to raise a separate federal constitutional claim. *See id.* at 1095. The state court may also have viewed the claim as "too insubstantial to merit discussion." *Id.* Therefore, the deferential standard of review in 28 U.S.C. § 2254(d)(2) applies. *Id.* at 1091–92.

The Confrontation Clause to the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The legal standard for evaluating whether there has been a violation of the Confrontation Clause is as follows:

> In *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), we . . . explained that "witnesses," under the Confrontation Clause, are those "who bear testimony," and we defined "testimony" as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.*, at 51, 124 S. Ct. 1354 (internal quotation marks and alteration omitted). The Sixth Amendment, we concluded, prohibits the introduction of testimonial statements by a nontestifying witness, unless the witness is "unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.*, at 54, 124 S. Ct. 1354. Applying that definition to the facts in *Crawford*, we held that statements by a witness during police questioning at the station house were testimonial and thus could not be admitted. But our decision in *Crawford* did not offer an exhaustive definition of "testimonial" statements. Instead, *Crawford* stated that the label "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*, at 68, 124 S. Ct. 1354.
>
> Our more recent cases have labored to flesh out what it means for a statement to be "testimonial." In *Davis v. Washington* and *Hammon v. Indiana*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), which we decided together, we dealt with statements given to law enforcement officers by the victims of domestic abuse. The victim in *Davis* made statements to a 911 emergency operator during and shortly after her boyfriend's violent attack. In *Hammon*, the victim, after being isolated from her abusive husband, made statements to police that were memorialized in a "'battery affidavit.'" *Id.*, at 820, 126 S. Ct. 2266.

We held that the statements in *Hammon* were testimonial, while the statements in *Davis* were not. Announcing what has come to be known as the "primary purpose" test, we explained: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*, at 822, 126 S. Ct. 2266. Because the cases involved statements to law enforcement officers, we reserved the question whether similar statements to individuals other than law enforcement officers would raise similar issues under the Confrontation Clause. *See id.*, at 823, n. 2, 126 S. Ct. 2266.

In *Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011), we further expounded on the primary purpose test. The inquiry, we emphasized, must consider "all of the relevant circumstances." *Id.*, at 369, 131 S. Ct. 1143. And we reiterated our view in *Davis* that, when "the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the [Confrontation] Clause." 562 U.S., at 358, 131 S. Ct. 1143. At the same time, we noted that "there may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Ibid.* "[T]he existence *vel non* of an ongoing emergency is not the touchstone of the testimonial inquiry." *Id.*, at 374, 131 S. Ct. 1143. Instead, "whether an ongoing emergency exists is simply one factor . . . that informs the ultimate inquiry regarding the 'primary purpose' of an interrogation." *Id.*, at 366, 131 S. Ct. 1143.

One additional factor is "the informality of the situation and the interrogation." *Id.*, at 377, 131 S. Ct. 1143. A "formal station-house interrogation," like the questioning in *Crawford*, is more likely to provoke testimonial statements, while less formal questioning is less likely to reflect a primary purpose aimed at obtaining testimonial evidence against the accused. *Id.*, at 366, 377, 131 S. Ct. 1143. And in determining whether a statement is testimonial, "standard rules of hearsay, designed to identify some statements as reliable, will be relevant." *Id.*, at 358–359, 131 S. Ct. 1143. In the end, the question is whether, in light of all the circumstances, viewed objectively, the "primary purpose" of the conversation was to "creat[e] an out-of-court substitute for trial testimony." *Id.*, at 358, 131 S. Ct. 1143. Applying these principles in *Bryant*, we held that the statements made by a dying victim about his assailant were not testimonial because the circumstances objectively indicated that the conversation was primarily aimed at quelling an ongoing emergency, not establishing evidence for the prosecution. Because the relevant statements were made to law enforcement officers, we again declined to decide whether the same analysis applies to statements made to individuals other

than the police. *See id.*, at 357, n. 3, 131 S. Ct. 1143.

> Thus, under our precedents, a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. "Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Id.*, at 359, 131 S. Ct. 1143. But that does not mean that the Confrontation Clause bars every statement that satisfies the "primary purpose" test. We have recognized that the Confrontation Clause does not prohibit the introduction of out-of-court statements that would have been admissible in a criminal case at the time of the founding. *See Giles v. California*, 554 U.S. 353, 358–359, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008); *Crawford*, 541 U.S., at 56, n. 6, 62, 124 S. Ct. 1354. Thus, the primary purpose test is a necessary, but not always sufficient, condition for the exclusion of out-of-court statements under the Confrontation Clause.

*Ohio v. Clark*, 135 S. Ct. 2173, 2179–81 (2015).

In *Clark*, the Supreme Court addressed whether the Confrontation Clause barred admission of a child's statements to his preschool teacher identifying the defendant as the person who had caused his injuries. Although the Supreme Court "decline[d] to adopt a rule that statements to individuals who are not law enforcement officers are categorically outside the Sixth Amendment," the Court noted that

> [s]tatements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than are statements made to law enforcement officers. It is common sense that the relationship between a student and his teacher is very different from that between a citizen and the police.

*Id.* at 2182.

Applying these standards, it is clear that the admission of the text messages did not violate the Confrontation Clause. The Supreme Court has recognized that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford*, 541 U.S. at 51. Kyles' text messages to Deloach were not directed to a police officer and are among the most casual possible remarks a

person can make to an acquaintance. There can be no argument that the messages were sent with any view toward providing evidence for a later prosecution of Justice. Instead, their purpose plainly was to calm DeLoach, who was concerned that she might face legal liability because her car appeared to have been used to commit a crime. Because the text messages were not testimonial, the Sixth Amendment is inapplicable. *Id.* at 68.

In addition, even if the messages were testimonial, there would be no Confrontation Clause violation because Kyles testified at trial and, therefore, Justice had the opportunity to cross-examine her about the messages.

Therefore, the decision of the Tennessee Court of Criminal Appeals on direct appeal was not contrary to, or an unreasonable application of, *Crawford v. Washington.*

Claim 3 is without merit and is DISMISSED.

Because every claim asserted by Petitioner is without merit, the Court DENIES the § 2254 Petition which is DISMISSED WITH PREJUDICE. Judgment shall be entered for Respondent.

## III. APPEAL ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005) (per curiam). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required

showing. 28 U.S.C. § 2253(c)(2)–(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Cockrell*, 537 U.S. at 336; *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Cockrell*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley*, 156 F. App'x at 773.

In this case, there can be no question that the § 2254 Petition is meritless for the reasons previously stated in this order and the order issued on March 31, 2014. Because any appeal by Petitioner on the issues raised in his § 2254 Petition does not deserve attention, the Court DENIES a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)–(5). In this case, for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED.[2]

---

[2] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).

IT IS SO ORDERED, this 11th day of August, 2015.

                                                                         s/ J. DANIEL BREEN  
                                                                         CHIEF UNITED STATES DISTRICT JUDGE